Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Jessica Joyce (SBN 353071)
jessie.joyce@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000

*Attorneys for Defendant*
*Michaels Stores, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, and THOMAS SIMMONS, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MICHAELS STORES, INC.,<br><br>Defendant. | Case No. 3:25-cv-05839-YGR<br>Assigned to: Hon. Yvonne Gonzalez Rogers<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 4, 2025<br>Time: 2:00 P.M.<br>Location: Courtroom 1, 4th Floor<br><br>Date Action Filed: July 11, 2025 |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........ 1
STATEMENT OF ISSUES PRESENTED ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. INTRODUCTION ........ 1
II. STATEMENT OF FACTS ........ 2
A. Plaintiffs' Claims Arise Out of Their Use of the Michaels Website ........ 2
B. Plaintiffs Agreed to Arbitrate Under the Website's Terms and Conditions ........ 4
C. Plaintiff's Claims Arise From the Arbitration Agreement ........ 7
III. LEGAL STANDARD ........ 7
IV. ARGUMENT ........ 8
A. Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis by Assenting to the Website Terms and Conditions ........ 9
1. Plaintiff Simmons Agreed to Arbitrate His Claims on an Individual Basis When He Signed Up for Michaels' Rewards Program ........ 9
2. Both Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis When They Used the Michaels Website ........ 11
B. Questions Of Arbitrability Or Enforceability Must Be Decided By An Arbitrator ........ 13
C. Plaintiffs' Claims Plainly Fall Within the Scope of the Arbitration Agreement ........ 14
D. The Action Should be Stayed ........ 15
V. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....7

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) ....9, 10, 11

*Belke v. Merrill Lynch, Pierce, Fenner & Smith*,
693 F.2d 1023 (11th Cir. 1982),
*overruled on other grounds by Dean Witter*, 470 U.S.....15

*Blau v. AT&T Mobility*,
No. C 11-00541 CRB, No. C 11-00541 CRB, 2012 WL 10546
(N.D. Cal. Jan. 3, 2012) ....8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....8, 13, 14

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)....7

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....14

*Dean v. OkCoin USA Inc.*,
No. 24-cv-01331-PCP, 2024 WL 3522207 (N.D. Cal. July 23, 2024)....10

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....8, 14

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....10, 11, 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....8, 13, 14

*Johnson v. Oracle Am., Inc.*,
No. 17-cv-05157-EDL, 2017 WL 8793341 (N.D. Cal. Nov. 17, 2017),
*aff'd*, 764 Fed. Appx. 607 (9th Cir. 2019) ....14

*JPay, Inc. v. Kobel*,
904 F.3d 923 (11th Cir. 2018) ....14

*Karim v. Best Buy Co., Inc.*,
No. 22-cv-04909-JST, 2023 WL 3801909 (N.D. Cal. June 2, 2023) ....12

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................2, 9, 10, 11

*Lemberg v. LuLaRoe, LLC*,
No. 17-02102-AB, 2018 WL 6927836 (C.D. Cal. Mar. 1, 2018)....................1

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,
252 F.3d 218 (2d Cir. 2001), *abrogated by, Local Union 97 v. Niagara Mohawk Power Corp.,* 67 F.4th 107 (2nd Cir. 2023)....................15

*Mackey v. Airbnb, Inc.*,
745 F. Supp. 3d 455 (S.D. Miss. 2024)....................13

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................12, 13

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................9, 11

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................14

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................2, 11, 12

*Silva v. WhaleCo, Inc.*,
No. 24-cv-02890-SK, 2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)....................10

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................8, 15

*Wargo v. Lavandeira*,
No. CV 09-2717-GHK (EX), 2009 WL 10672829 (C.D. Cal. Dec. 18, 2009) ....................13

**Statutes**

9 U.S.C. § 1, *et seq* (Federal Arbitration Act ("FAA")) ....................1, 4, 7, 8, 15

FAA § 2....................7

FAA § 3....................2, 15

FAA § 4....................2, 8, 14

Cal. Penal Code § 631("Privacy Act") ()....................1, 4

Cal. Penal Code § 638.51 (California Invasion of Privacy Act ("CIPA")) ....................1, 4

Fed. R. Civ. Proc. 12....................1

**Other Authorities**

AAA Consumer Arbitration R-14 ........................................................................ 2, 13, 14

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Please take notice that on November 4, 2025 at 2:00 p.m., defendant Michaels Stores, Inc. ("Defendant" or "Michaels"), will bring for hearing this Motion to Compel Arbitration, before the Honorable Yvonne Gonzalez Rogers, Oakland Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, CA 94612.

Defendant hereby moves the Court for an Order staying all proceedings in this action pending conclusion of arbitration of the claims in Plaintiffs Sonni Echeverria-Corzan and Thomas Simmons's (together, "Plaintiffs") Class Action Complaint (the "Complaint") (ECF No. 1) in favor of arbitration pursuant to Federal Rule of Civil Procedure 12[1] and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*.

This Motion is based on this Notice, the Memorandum of Points and Authorities and attached exhibits, the complete files and records of this action, and such other matters and arguments as may come before this Court, including those raised in connection with reply briefing and oral argument.

## STATEMENT OF ISSUES PRESENTED

Whether Plaintiffs' claims for relief for invasion of privacy, intrusion upon seclusion, wiretapping in violation of the California Invasion of Privacy Act ("CIPA") (California Penal Code § 631), use of a pen register in violation of CIPA (California Penal Code § 638.51), common law fraud, unjust enrichment, and trespass to chattels should be stayed in favor of arbitration pursuant to the FAA.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs claim Michaels violated their privacy by letting third parties transmit cookies after they had opted out of all "unnecessary cookies." ECF No. 1 ("Compl.") ¶ 5. But this case does not belong in court. When Plaintiffs used the Michaels website—and especially when they set their

[1] Courts in this Circuit generally agree that a motion to compel arbitration is a Rule 12(b) motion. *See Lemberg v. LuLaRoe, LLC*, No. 17-02102-AB (SHKx), 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) (citing cases).

privacy preferences—they agreed to the Michaels.com Terms and Conditions ("Terms"). Those Terms contain a clear arbitration agreement and class action waiver. Plaintiff Thomas Simmons went further: he signed up for a Rewards account, expressly agreeing to the Terms and to resolve disputes through individual arbitration. By agreeing to the Terms, Plaintiffs also agreed that any dispute about the scope or validity of their agreement to arbitrate would be decided by an arbitrator, not the Court. Thus, the only matter for this Court to decide under Ninth Circuit law is whether there is a contract containing an arbitration provision. There is.

In these Terms, Plaintiffs agreed to arbitrate "***all disputes or claims*** you may have with [Michaels], including those arising out of or relating to this Agreement, ***your access to and use of the Site***, any purchase on the Site, or any other aspect of your relationship or interactions" with Defendant, whether "based in contract, tort, statute, fraud, misrepresentation or any other legal theory." Declaration of Bridget A. Bach ("Bach Decl.") ¶ 7, Exs. C-1 at 15 and C-2 at 15 (the "Arbitration Agreement"). And because the Arbitration Agreement incorporates the rules of the American Arbitration Association ("AAA"), Plaintiffs also agreed that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules, R-14 (2014).

The law is clear: a website user is bound by terms if they have actual or constructive notice of them. *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020). And as to Plaintiff Simmons, the Ninth Circuit has squarely held that "sign-in wrap" or "clickwrap" agreements are enforceable where the disclosure provides reasonable notice of the terms and the consumer takes some action—here, clicking a button—to manifest assent to those terms. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citation omitted). Accordingly, pursuant to Sections 3 and 4 of the FAA, Defendant respectfully request that the Court compel arbitration of this matter and stay this action pending the arbitration.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Claims Arise Out of Their Use of the Michaels Website.

Michaels is an arts and crafts retailer specializing in crafting materials, home decor, and

framing services. Michaels also owns and operates the website at https://www.michaels.com (the "Website") where customers can make purchases online. Compl. ¶ 29. Plaintiffs Sonni Echeverria-Corzan and Thomas Simmons are California residents who claim to have visited the Website on one or more occasions during the last four years to seek information about Michaels' products. Compl. ¶¶ 110, 120.

Upon visiting the Website, Plaintiffs—like all visitors—immediately encountered a conspicuous pop-up banner (the "Privacy Banner") disclosing that Michaels uses website tools such as cookies, and shares information about website visits with social media, advertising, and analytics partners, as evidenced by the following partial screenshot:




Bach Decl. ¶ 4, Ex. A.[2]

The Privacy Banner includes a prominent link to the Cookie Preference Center where users may adjust default privacy settings and learn more about Michaels' data sharing practices. *See id.* The current Privacy Banner includes an underlined hyperlink to Michaels' complete privacy policy ("the Privacy Policy"). The Privacy Policy describes in detail what website tools Michaels uses, how those tools operate, and what user privacy rights are implicated. *See* Bach Decl. Exs. D-1 at 3-5, D-2 at 3-5, and D-3 at 3-6.

---

[2] The banner shown here is the current Privacy Banner on the Website. *See* Bach Decl. ¶ 4, Ex. A. The privacy banner described in the complaint does not reflect the current disclaimer language above in gray, non-underlined text that has been in place since at least August 1, 2023. *Compare id., with* Compl. ¶¶ 1, 32, 112, 122.

According to the Complaint, when Plaintiffs visited the Website, they clicked on the Cookie Preferences link and manually adjusted the settings in the Cookie Preference Center to opt out of all optional cookies. Compl. ¶¶ 113, 123. Plaintiffs allege that, despite these actions, Michaels caused third-party cookies to be placed on Plaintiffs' devices and to transmit user data to third parties. *Id.* ¶¶ 37, 117, 127. Based on these allegations, Plaintiffs assert claims on behalf of themselves and a putative class for invasion of privacy, intrusion upon seclusion, wiretapping in violation of the California Invasion of Privacy Act ("CIPA"), use of a pen register in violation of CIPA, common law fraud, unjust enrichment, and trespass to chattels. *Id.* ¶¶ 138–217. Plaintiffs filed their class action complaint in the United States District Court for the Northern District of California.

**B. Plaintiffs Agreed to Arbitrate Under the Website's Terms and Conditions.**

By using Michaels' Website, and as to Plaintiff Simmons, signing up for a Rewards account, Plaintiffs assented to the Terms and Conditions governing use of the Website. *See* Compl. ¶¶ 110, 120. The Terms and Conditions state that "[b]y accessing or using the [Website], you agree to follow and be bound by this Agreement" and that "[i]f you do not agree to these terms, please do not use the [Website]." Bach Decl. ¶ 7, Exs. C-1 at 1 and C-2 at 1-2.

The Terms and Conditions contain a comprehensive arbitration agreement—the existence of which is highlighted at the outset of the terms:

> This Agreement contains an arbitration provision and waiver of significant legal rights that will apply to help resolve any dispute between you and us. Please read this agreement carefully. Our Privacy Policy describes how we collect and use your personal information to provide the [Website] and is part of these Terms with Michaels.

Bach Decl. ¶ 7, Exs. C-1 at 1 and C-2 at 1. The Arbitration Agreement is governed by the Federal Arbitration Act and Texas State law and mandates that "the arbitration of any dispute or claim shall be conducted in accordance with the rules of the AAA, including the AAA's Consumer Arbitration Rules (as applicable), as modified by these Terms and Conditions." *Id*, Exs. C-1 at 15 and C-2 at 15. The Arbitration Agreement applies broadly to all claims related use of the Website:

> BINDING ARBITRATION REQUIRED. This provision is intended to be interpreted broadly to encompass ***all disputes or claims*** you may have with us, including those arising out of or relating to this Agreement, ***your access to and use of the Site***, any purchase on the Site, or any other aspect of your relationship or interactions with us. ***Any dispute or claim arising out of or relating to this Agreement, your access to or***

> ***use of the Site***, or your relationship with us or any subsidiary, parent or affiliate company or companies (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) ***will be resolved by binding arbitration***, except that either of us may take claims to small claims court if they qualify for hearing by such a court.

*Id.* (emphasis added). Moreover, the provision includes a prominent class action waiver requiring that "any proceeding, whether in arbitration or in court, will be conducted only on an individual basis and not in a class, consolidated or representative action." *Id.*, Exs. C-1 at 16 and C-2 at 16.

Prominent links to the Terms and Conditions are available throughout the Website, including through the "Resources" menu in the website footer which is accessible on *every page* of the website. Bach Decl. ¶ 7. A link to the Terms and Conditions is also visible while viewing the Privacy Policy, directly above the link to the Privacy Policy. *Id.* Additionally, the Privacy Policy makes multiple references to the Terms and includes Michaels' Text Messaging Terms and Conditions, which feature a similar arbitration provision. Bach Decl. ¶ 8, Exs. D-1 at 10-13, D-2 at 10-13, and D-3 at 11-14.

Further, on October 3, 2023, Plaintiff Simmons created a Michaels Rewards account on the Michaels website. Bach Decl. ¶ 5. While signing up for an account, Plaintiff was directed to an account creation page on the Michaels website. The bottom of this page reads: "By clicking Sign up, you acknowledge you have read and agree to our **Terms and Conditions** and **Privacy Policy**." *Id.* ¶ 6. The sign-up page to which Plaintiff was directed to create an account appeared in the same form as the partial screenshot on the following page:


Let's Start. Tell Us About You.
Need to sign in? Click Here
Tell us about you
First Name *
Last Name *
Email Address *
Phone Number (Optional)
Sign up for Michaels Text Messages. Details
Create your Password
Password *
Confirm Password *
Michaels REWARDS
Get paid to shop at Michaels, and it's FREE!
Terms and Conditions | Rewards FAQs
Enroll in Michaels Rewards today!
Earn Rewards on your purchases and get vouchers to spend online or in-store.
I signed up in store!
I'm already earning Rewards that I spend on purchases online and in-store!
Not at this time
I'll wait on signing up for Rewards.
Phone Number *
Birthday (Optional)
MM/DD
Sign up for Michaels Emails and get the latest trends, deals and promotions.
I certify that I am at least 13 years of age
Keep me signed in. Details
By clicking Sign up, you acknowledge you have read and agree to our Terms and Conditions and Privacy Policy.
Sign up

*Id.* ¶ 6, Ex. B. Users, including Plaintiff, cannot complete the Rewards sign-up process without affirmatively agreeing to the Terms & Conditions and Privacy Policy linked at the bottom of the screen. *See id.* The phrase "Terms and Conditions" is bolded and hyperlinked such that the Terms are easily accessible and can be reviewed by clicking anywhere on the bolded phrase. *Id.* As discussed above, these Terms include an arbitration provision for "ALL MATTERS RELATING TO YOUR ACCESS TO OR USE OF THE SITE." *Id.*, Exs. C-1 at 18 and C-2 at 18.

### C. Plaintiff's Claims Arise From the Arbitration Agreement

Plaintiffs agreed to the AAA's Consumer Arbitration rules, which delegate any questions regarding the validity or scope of the Arbitration Agreement to an arbitrator. Consequently, Michaels respectfully submits that Plaintiffs may not argue that his claims fall outside the scope of the Arbitration Agreement. Nonetheless, and without waiver of Michaels' right to have the arbitrator decide this issue, Michaels respectfully submits that Plaintiffs' claims clearly relate to or arise out of their "access to and use of the website." Likewise, the class that Plaintiffs purport to represent are "[a]ll persons who, while in the State of California browsed the Website after selecting or clicking the "Cookie Preferences" link in the popup cookies consent banner, then adjusted the toggle switch on the Cookie Preference Center window to opt-out of or reject all Optional or unnecessary cookies on the Website, and clicked the "Confirm My Choices" button." Compl. ¶ 130. Any purported disputes by any putative class member, as defined here, also relate to or arise out of their "access to and use of the website" and thus are subject to arbitration.

## III. LEGAL STANDARD

Section 2 of the FAA provides that an arbitration agreement provision in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA applies to any arbitration agreement that is "written" and that is in a contract evidencing "a transaction involving commerce." 9 U.S.C. § 2; *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." (citation omitted)).

Once a court determines that the parties to a litigation agreed to arbitrate, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate and stay the action pending the outcome. *See Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

While under the FAA courts ordinarily determine whether a dispute falls within the scope of an arbitration provision, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (cleaned up). In such cases, the court looks to whether the parties "clearly and unmistakably" gave such authority to the arbitrator. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Schein*, 586 U.S. at 67-68. Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Schein*, 586 U.S. at 69; *Brennan*, 796 F.3d at 1130.

When parties enter into an arbitration agreement and one party fails to comply, the aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[U]pon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. The burden then shifts to the party opposing arbitration to put "the making of that agreement 'in issue.'" *Blau v. AT&T Mobility*, No. C 11-00541 CRB, No. C 11-00541 CRB, 2012 WL 10546, at *3 (N.D. Cal. Jan. 3, 2012) (citation omitted).

## IV. ARGUMENT

The Court should enforce the Arbitration Agreement between the parties and stay this action. Plaintiffs entered into a valid and enforceable agreement to arbitrate. Furthermore, the parties have explicitly agreed under the Arbitration Agreement to delegate any questions regarding the scope or enforceability of the agreement to the arbitrator. Accordingly, the Court should grant Defendant's Motion.

### A. Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis by Assenting to the Website Terms and Conditions.

#### 1. Plaintiff Simmons Agreed to Arbitrate His Claims on an Individual Basis When He Signed Up for Michaels' Rewards Program.

Federal courts apply state law principles to the issue of contract formation. *Keebaugh*, 100 F.4th at 1013–14. "To form a contract under California law, there 'must be actual or constructive notice of the agreement and the parties must manifest mutual assent.'" *Id.* at 1014 (quoting *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023). A sign-in wrap agreement gives adequate inquiry notice to users if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *See Keebaugh*, 100 F.4th at 1014 (a "sign-in wrap" agreement occurs when a user signs up for an internet product or service and the sign-in screen states that acceptance of a separate agreement is required before the user can access the service). When evaluating sign-in wrap agreements, courts must first evaluate "the full context of the transaction and consider whether that type of transaction contemplates entering into a continuing, forward looking relationship governed by terms and conditions." *Id.* at 1017 (citing *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 950-51 (2022)) (cleaned up) (enforcing arbitration clause and holding that users contemplated entering into a continuing, forward-looking relationship governed by terms and conditions when users downloaded and used a gaming app that informed users that by pressing the "Play" button below the terms, they agreed to the Terms of Service).

Courts in this Circuit—as recently confirmed by the Ninth Circuit—have held that a website provides reasonably conspicuous notice, and thus represents an enforceable sign-in wrap agreement, when the notice is presented in such a way that "a reasonably prudent Internet user would have seen it." *Keebaugh*, 100 F.4th at 1014 (enforcing arbitration clause in terms where the notice is visually clear, directly beneath the operative Play button, and displayed in a contrasting font color to the interface background); *see also Oberstein*, 60 F.4th at 516 (holding that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink" when the notice is "conspicuously displayed directly above or below the action button" and "the language . . . clearly denotes that

continued use will act as a manifestation of the user's intent to be bound" (cleaned up) (citation omitted)). Furthermore, when a consumer signs up for an ongoing account, "it is reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship" governed by terms and conditions. *Blizzard*, 76 Cal. App. 5th at 951 (reversing the denial of a motion to compel arbitration where the Plaintiff frequently accessed the online platform, purchased add-ons, and "spent approximately 50 hours playing . . . over the course of approximately two years").

Here, Plaintiff Simmons assented to the Arbitration Agreement when he created his Rewards account on the Website after being presented with a conspicuous disclosure on the Michaels Rewards sign-up page. *See* Bach Decl. ¶¶ 5, 6. The sign-up page provided,in a contrasting, dark font, that, "By clicking Sign-up, you acknowledge that you have read and agree to our **Terms and Conditions** and **Privacy Policy**" *Id.* ¶ 6, Ex. B (emphasis in original). As shown *supra*, the Terms and Conditions were bolded and hyperlinked and disclosed just next to the sign-up button that Plaintiff was required to click to create his account. *Id.* By clicking anywhere on those underlined words, Plaintiffs were able to review the Terms of Use and Privacy Policy associated with their use of the Michaels website before agreeing to sign-up.

Courts have consistently enforced arbitration clauses disclosed in a similar manner. *See, e.g.*, *Silva v. WhaleCo, Inc.*, No. 24-cv-02890-SK, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024) (enforcing arbitration agreement where disclosure below sign-up button was "large enough to read" and "stands out from the surrounding text"); *Dean v. OkCoin USA Inc.*, No. 24-cv-01331-PCP, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024) (holding the same where terms were bolded and treated "in contrast to almost all other text on the page"); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 926 (N.D. Cal. 2024) (holding the same where the sign-in screen "'lack[ed] clutter'" and "[t]he design elements used 'a contrasting font color' making the notice legible") (quoting *Keebaugh*, 100 F.4th at 1020–21)). These courts have noted that the context of the transaction—here, signing up for an account via website, is an "important factor to consider and is key to determining the expectations of a typical consumer," as most consumers would understand that they need to agree to a set of terms when signing up for an ongoing account, such as a Rewards program. *See Keebaugh*, 100 F.4th at

1019 (citing *Blizzard*, 76 Cal. App. 5th at 947. And courts have made clear that a plaintiff cannot disclaim a sign-up disclosure simply based on the font size or color of the disclosure: instead, a district court should "consider[s] the full context of the hyperlink as presented." *Ghazizadeh*, 737 F. Supp. 3d at 929.

Here, arbitration should be compelled for the same reason it was compelled by these other courts: Plaintiff Simmons received conspicuous notice of, and was required to assent to, the Terms when he created his Rewards accounts from the sign-up page of Michaels' Website and. Plaintiff's creation of a Michaels Rewards account manifested his intent to be bound by the agreement's terms. *See Oberstein*, 60 F. 4th at 516. When Plaintiff Simmons created his Michaels Rewards account on the Website, he signaled clearly that he accepted its Terms and intended to enter an ongoing relationship governed by those Terms. He is bound accordingly.

### 2. Both Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis When They Used the Michaels Website.

Independent of Plaintiff Simmons's express agreement during the Rewards sign-up, both Plaintiffs assented to the Terms and Conditions, including the Arbitration Agreement, through their use of the Michaels Website. A website user is bound by the site's terms if the user has actual or constructive (inquiry) notice of the agreement. *Peter*, 445 F. Supp. 3d at 585. To establish inquiry notice, as with sign-in wrap, courts examine whether (1) the website provides reasonably conspicuous notice of the terms, and (2) the user takes action that manifest assent to those terms. *Ghazizadeh*, 737 F. Supp. 3d at 924. The Michaels Website, particularly in the context of Plaintiffs' specific interactions with it, meets this standard.

First, the Website provides reasonably conspicuous notice of its Terms and Conditions, especially when viewed within the "context of the transaction." *Id*. at 925. Plaintiffs' own allegations establish they were not passive users of the Michaels website; they took deliberate steps to investigate and configure their privacy settings. Upon visiting the Website, they encountered the Privacy Banner. Compl. ¶¶ 1, 32, 112, 122. They affirmatively clicked the "Cookie Preferences" link on that banner. *Id*. ¶¶ 33, 113, 123. They then navigated to the Cookie Preference Center, adjusted the toggle switch to opt out of optional cookies, and clicked "Confirm My Choices." *Id*. ¶¶ 34–35, 113, 123.

These affirmative actions distinguish this case from those involving mere passive browsing. When a user actively engages with the mechanisms governing their relationship with a website—especially privacy controls—they should expect their access to be governed by formal terms. *See Ghazizadeh*, 737 F. Supp. 3d at 926 (finding that users signing up for ongoing access to an educational platform "would similarly expect (or should expect) their access to the platform would be continual and governed by some terms of use"). By actively managing their privacy relationship with Michaels, Plaintiffs contemplated an ongoing interaction governed by the Website's rules.

This context makes the placement of the Terms and Conditions conspicuous. Links to the Terms are available on every page in the footer. Bach Decl. ¶ 7. The current cookie banner includes a link to the Privacy Policy, and once a user navigates to the Privacy Policy, a link to the Terms and Conditions is visible directly above the link to the Privacy Policy in the Resource Center menu.[3] *Id.* ¶¶ 4, 7. This "spatial coupling" ensures that users investigating the Website's privacy practices—as Plaintiffs explicitly claim they did—will encounter the governing Terms. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (finding notice reasonable when terms are presented "at a place and time that the consumer will associate with the initial purchase or enrollment, or the use of" the services); *Peter*, 445 F. Supp. 3d at 586 (emphasizing the proximity of the notice text to the area where the user interacted with the site). Furthermore, the Privacy Policy itself refers to the Terms and includes the Michaels Text Messaging Terms and Conditions, which contain a similar arbitration provision. Bach Decl. ¶ 8, Exs. D-1 at 10-13, D-2 at 10-13, and D-3 at 11-14. A reasonably prudent user configuring their privacy settings is thus put on clear notice of the adjacent and referenced Terms.

Second, Plaintiffs unambiguously manifested their assent to the Terms by continuing to use the Website after receiving this notice. Assent is unambiguous if the user is "explicitly advised" of the legal significance of their actions. *Karim v. Best Buy Co., Inc.*, No. 22-cv-04909-JST, 2023 WL 3801909, at *5 (N.D. Cal. June 2, 2023) (citation omitted). The Michaels Terms and Conditions

[3] While Plaintiffs do not allege the date they accessed the website, the statute of limitations for the purposes of Plaintiffs' California Invasion of Privacy Act claims is one year prior to the filing of the complaint on July 11, 2025. Cal. Civ. Proc. Code § 340(a). As stated above, the cookie banner Plaintiffs reference in the Complaint has not been in place since at least August 1, 2023. *See supra* fn. 2.

provide that explicit advisory: "By accessing or using the [Website], you agree to follow and be bound by this Agreement," and "[i]f you do not agree to these terms, please do not use the [Website]." Bach Decl. Ex. C at 1.

"By operation of the Website's browsewrap agreement, [Plaintiffs'] mere navigation of the site constitutes constructive knowledge of, and therefore assent to, the terms contained in the [Terms and Conditions]." *Wargo v. Lavandeira*, No. CV 09-2717-GHK (EX), 2009 WL 10672829, *3 (C.D. Cal. Dec. 18, 2009), enforcement granted in part, No. CV 09-2717-GHK (EX), 2010 WL 11519555 (C.D. Cal. Feb. 9, 2010). When a website provides conspicuous notice that use constitutes acceptance, the user unambiguously manifests assent by continuing to use the site. *See Meyer*, 868 F.3d at 80. Plaintiffs cannot avoid the agreement simply by failing to read the Terms of which they had constructive notice. *Mackey v. Airbnb, Inc.*, 745 F. Supp. 3d 455, 462 (S.D. Miss. 2024) ("A failure to read a legally binding agreement is no defense to contract formation."). Plaintiffs had a choice: they could accept the benefits of using the Website subject to the Terms, or, if the Terms were unacceptable, they could decline to use the Website. *Meyer*, 868 F.3d at 80. By choosing instead to configure their settings and continue browsing the Website (Compl. ¶ 35), Plaintiffs accepted the Terms and are bound by the Arbitration Agreement contained therein. *See Wargo,* 2009 WL 10672829 at *3.

### B. Questions Of Arbitrability Or Enforceability Must Be Decided By An Arbitrator

Parties may also agree to have an arbitrator decide "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Schein*, 586 U.S. at 67-68 (cleaned up). Where an arbitration agreement expressly incorporates the rules of an arbitration association, the rules of the association apply with respect to whether the arbitrator or court will decide threshold issues of arbitrability and scope. *Id.* The Ninth Circuit has held that "[i]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130.

Here, the Arbitration Agreement expressly incorporates the AAA rules, including AAA

Consumer Arbitration Rule R-14.[4] Accordingly, under *Brennan* and other case law enforcing similar language, Plaintiffs agreed to delegate any dispute relating to scope or arbitrability to the arbitrator when he assented to the Arbitration Agreement. *See, e.g. Johnson v. Oracle Am., Inc.*, No. 17-cv-05157-EDL, 2017 WL 8793341, at *6-9 (N.D. Cal. Nov. 17, 2017), *aff'd,* 764 Fed. Appx. 607 (9th Cir. 2019) (enforcing arbitration agreement that incorporated AAA and JAMS rules; finding no distinction between incorporation of AAA rules and incorporation of JAMS rules for purposes of assessing intent to arbitrate); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) (finding that Eleventh Circuit precedent uniformly finds the incorporation of AAA rules as clearly evidencing the parties' intent to delegate). Accordingly, any arguments raised by Plaintiffs with respect to whether their claims are covered by the Arbitration Agreement must be arbitrated. *Schein*, 586 U.S. at 69; *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (same).

**C. Plaintiffs' Claims Plainly Fall Within the Scope of the Arbitration Agreement.**

Because the parties agreed that any disputes about the validity or scope of the Arbitration Agreement must go to the arbitrator, the Court should not consider such arguments if Plaintiffs raise them on opposition. *Schein*, 586 U.S. at 69; *Brennan*, 796 F.3d at 1130. Section 4 of the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original)

Nonetheless, to the extent that Plaintiffs seek to avoid the delegation of any dispute regarding the scope or validity of the Arbitration Agreement to the arbitrator, Michaels respectfully submits (without waiver of its rights to compel under the Arbitration Agreement) that the scope of the Arbitration Agreement clearly encompasses Plaintiffs' disputes. The Arbitration Agreement broadly covers "all disputes or claims you may have with [Michaels], including those arising out of relating to

[4] The Arbitration Agreement requires that any arbitration proceedings "shall be conducted in accordance with the rules of the American Arbitration Association ("AAA"), including the AAA's Consumer Arbitration Rules (as applicable), as modified by these Terms and Conditions." AAA's Consumer Arbitration Rule R-14(a) states that "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rules, R-14 (2014).

this Agreement, your access to and use of the Site, any purchase on the Site, or any other aspect of your relationship or interactions with us." Bach Decl. ¶ 7, Exs. C-1 at 15 and C-2 at 15. The Ninth Circuit and other appeals courts have construed similarly broad provisions regarding "any" claims related to an agreement in favor of compelling arbitration. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 475 (9th Cir. 2024) (holding that an agreement to arbitrate "any and all claims" between the parties "arising from or relating in any way to your use or purchase of products or services through the website or services" is enforceable); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 225 (2d Cir. 2001), *abrogated by, Local Union 97 v. Niagara Mohawk Power Corp.,* 67 F.4th 107 (2nd Cir. 2023) (holding that broad construction is given to clauses that provide for arbitration of "[a]ny dispute"); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th Cir. 1982) ("An arbitration clause covering disputes arising out of the contract or business [relationship] between the parties evinces a clear intent to cover more than just those matters set forth in the contract."), *overruled on other grounds by Dean Witter*, 470 U.S. at 213.[5]

Thus, Michaels (without waiver of its right to delegate such issues to the arbitrator) respectfully submits that Plaintiffs' claims fall within the scope of the Arbitration Agreement, and also that Michaels is entitled to enforce the Arbitration Agreement.

**D. The Action Should be Stayed.**

When a district court finds that a lawsuit "involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. at 478. At a minimum, the FAA requires that this case be stayed "until such arbitration has been had" in accordance with the terms of the Arbitration Agreement. 9 U.S.C. § 3.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its motion to compel Plaintiffs to arbitrate their claims against Defendant on an individual basis and to stay the case pending arbitration.

[5] The parties' agreements also include a class action waiver. Defendant reserves the right to seek to have Plaintiffs' class action allegations stricken and/or class certification denied based on his waiver of any purported right to file a putative class action.

Dated: September 12, 2025

Respectfully submitted,

**SIDLEY AUSTIN LLP**

By: */s/ Amy P. Lally*

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Jessica Joyce (SBN 353071)
jessie.joyce@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000

*Attorneys for Defendant*
*Michaels Stores, Inc.*