Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Jessica A. Joyce (SBN 353071)
jessie.joyce@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000

*Attorneys for Defendant*
*Michaels Stores, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SONNI ECHEVERRIA-CORZAN, and THOMAS SIMMONS, individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MICHAELS STORES, INC.,<br><br>Defendant. | Case No. 4:25-cv-05839-YGR<br>Assigned to: Hon. Yvonne Gonzalez Rogers<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date: November 4, 2025<br>Time: 2:00 P.M.<br>Location: Courtroom 1, 4th Floor<br><br>Date Action Filed: July 11, 2025 |

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis by Assenting to Michaels' Terms and Conditions. ..... 2

1. Plaintiff Simmons Agreed to Arbitrate His Claims by Signing Up for the Rewards Program with His Personal Email Address. ..... 2

2. Both Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis When They Used the Website. ..... 7

B. Questions of Arbitrability or Enforceability Must Be Decided by the Arbitrator. ..... 9

1. The *McGill* Rule Does Not Bar Enforcement of the Arbitration Agreement. ..... 11

III. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bender v. Twilio Inc.*,
No. 24-CV-04914-AMO, 2025 WL 2308484 (N.D. Cal. Aug. 11, 2025)....6

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022)....8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015)....9, 10

*Calzadillas v. Wonderful Co.*,
No. 1:19-cv-00172-DAD-JLT, 2019 WL 2339783 (E.D. Cal. June 3, 2019)....11

*Capriole v. Uber Techs., Inc.*,
7 F.4th 854 (9th Cir. 2021)....12

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984)....11

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025)....3, 4, 5, 8

*Chen v. Premier Fin. All., Inc.*,
No. 18-CV-3771 YGR, 2019 U.S. Dist. LEXIS 10280 (N.D. Cal. Jan. 22, 2019) (Gonzalez-Rogers, J.)....9

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. Jan. 5, 2017)....10

*Dean v. OkCoin USA Inc.*,
No. 24-cv-01331-PCP, 2024 WL 3522207 (N.D. Cal. July 23, 2024)....5

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024)....5, 9

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021)....12

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023)....12

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)....5, 7

*Lewis v. Kelly Servs. Glob., LLC*,
No. 2:24-cv-06781-JLS-AGR, 2024 WL 5220080 (C.D. Cal. Nov. 7, 2024) ....................... 11

*Long v. Provide Com., Inc.*,
245 Cal. App. 4th 855 (2016) ....................... 8

*Magill v. Wells Fargo Bank, N.A.*,
No. 4:21-cv-01877 YGR, 2021 U.S. Dist. LEXIS 248891 (N.D. Cal. June 25, 2021) (Gonzalez-Rogers, J.) ....................... 10

*Maldonado v. Fast Auto Loans, Inc.*,
60 Cal. App. 5th 710 (2021) ....................... 12

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) ....................... 11-12

*Maybaum v. Target Corp.*,
No. 2:22-CV-00687-MCS-JEM, 2022 WL 1321246 (C.D. Cal. May 3, 2022) ....................... 10

*McGill v. Citibank,*
2 Cal. 5th 945, 393 P.3d 85 (2017) ....................... 11, 12

*Morrison v. Yippee Ent., Inc.*,
No. 24-7235, 2025 WL 2389424 (9th Cir. Aug. 18, 2025) ....................... 5

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ....................... 7, 8

*Norman v. Uber Techs., Inc.*,
No. 20-CV-06700-JSW, 2021 WL 4497870 (N.D. Cal. Apr. 14, 2021) ....................... 12

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................... 6

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 LX 394849 (N.D. Cal. Sep. 5, 2025) ....................... 7

*Ramirez v. Cnty. of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) ....................... 11

*Romero v. HP, Inc.*,
No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017) ....................... 11

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-CV-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025) ....................... 6

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) ....................... 6

*Silva v. WhaleCo, Inc.*,
No. 24-cv-02890-SK, 2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)........................................5

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ........................................................................10

**Statutes & Authorities**

California Invasion of Privacy Act (CIPA) ........................................................................12

Consumer Legal Remedies Act (CLRA) ..............................................................................12

False Advertising Law (FAL)..............................................................................................12

Fed. R. Civ. P. 15 ...............................................................................................................11

Unfair Competition Law (UCL) .........................................................................................12

## I. INTRODUCTION

Plaintiffs' Opposition to Defendant Michaels Stores, Inc. ("Michaels")'s Motion to Compel Arbitration (the "Motion") does not change the result here: arbitration must be compelled. The Motion demonstrates that Plaintiff Simmons expressly assented to the arbitration agreement ("Arbitration Agreement" or the "Agreement) in the Terms and Conditions ("Terms") on Michaels' website (the "Website") by signing up for the Michaels Rewards program—a paradigmatic example of an enforceable sign-in wrap agreement under Ninth Circuit authority. And, independently, both Plaintiffs are bound under well-established browsewrap principles because the Website provided reasonably conspicuous notice of the Terms and Plaintiffs continued to use the Website after configuring their privacy settings. The Terms include a binding arbitration provision and class-action waiver, and they incorporate rules that delegate questions of arbitrability to the arbitrator. Plaintiffs' claims, moreover, arise out of and relate to their use of the Website and thus fall squarely within the Agreement's scope.

First, Plaintiffs incorrectly contend that Plaintiff Simmons did not sign up for a Rewards account and that, even if he had, the sign-in wrap agreement is unenforceable. Plaintiffs' argument focuses on the email tomcarsim@yahoo.com, which Simmons allegedly shared with a former partner. But that address is irrelevant. The email address Plaintiffs' counsel provided to Defendant—tomwoon@yahoo.com—is the one associated with Simmons in Michaels' business records, which confirm that this address was used to register a Michaels' Rewards account. As to the sign-up screen itself, Plaintiffs complain that the hyperlink text to the Terms was too small, the wrong color, or placed too far from the sign-up button. Courts in this District have rejected these piecemeal challenges, holding instead that courts assess the disclosure's overall conspicuousness holistically, taking into account the full context of the sign-up screen rather than any particular design element. The Michaels Rewards sign-up screen easily satisfies this standard: the uncluttered screen presents the relevant disclosure in a contrasting font, positioned directly adjacent to the "Sign up" button.

Second, Plaintiffs argue that they are not bound to arbitrate through their continued use of the Website. But under well-settled browsewrap principles, both Plaintiffs are independently bound. The Michaels Website provided reasonably conspicuous notice of the Terms and Conditions—linked on every page through the "Resources" menu and repeatedly referenced throughout Plaintiffs'

interactions with the site. Plaintiffs' reliance on inapposite cases involving illegible and/or inconspicuous sign-in wrap disclosures, such as *Berman* and *ClassPass*, or one-time purchase transactions like *Nguyen* and *Long*, that did not contemplate an ongoing relationship, misses the mark. By actively engaging with the site's cookie and privacy settings, Plaintiffs were on inquiry notice that their continued use of the Website was governed by the Terms, including the Arbitration Agreement.

Third, Plaintiffs try to avoid the clear delegation language and invocation of the AAA rules in the Arbitration Agreement by arguing that they are unsophisticated and did not know their continued use of the Website would subject them to arbitration. But the Ninth Circuit has left open the question of whether arbitration agreements may be enforced against unsophisticated parties, and Plaintiffs have pled no specific facts evidencing such a lack of sophistication. As a last-ditch effort, Plaintiffs argue that the Arbitration Agreement violates *McGill*, citing authority that has been expressly rejected by the Ninth Circuit. Even if Plaintiffs' *McGill*-based challenge had merit—which it does not—the issue of whether the Arbitration Agreement permits public injunctive relief is a threshold question of arbitrability that the parties have delegated to the arbitrator.

In short, Plaintiffs' Opposition offers no credible basis to avoid the Arbitration Agreement, and the Court should compel arbitration and stay this action.

## II. ARGUMENT

### A. Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis by Assenting to Michaels' Terms and Conditions.

Plaintiffs' Opposition fails to overcome the clear and binding effect of the Arbitration Agreement to which they assented by using the website and, for Plaintiff Simmons, by signing up for a Rewards account. As set forth in Defendant's Motion, both Plaintiffs entered into a valid and enforceable agreement to arbitrate on an individual basis by manifesting assent to the Terms, which provide conspicuous notice of the arbitration provision and class action waiver.

#### 1. Plaintiff Simmons Agreed to Arbitrate His Claims by Signing Up for the Rewards Program with His Personal Email Address.

Plaintiff Simmons cannot escape the fact that he signed up for a Michaels Rewards account, and in doing so, consented to arbitrate his claims through a sign-in wrap mechanism that the Ninth

Circuit has repeatedly found to be enforceable. Plaintiffs' Opposition devotes significant attention to the email address tomcarsim@yahoo.com, which Simmons claims he shared with a prior partner. *See* ECF No. 25 ("Opp.") at 8:6–14; 16:7–17:14. However, this focus is misplaced and irrelevant to the question of whether Simmons agreed to arbitrate his claims. Michaels' investigation into Simmons' Rewards program membership was not based on the tomcarsim@yahoo.com address. Instead, Michaels relied on the email address that Plaintiffs' counsel provided to Michaels: tomwoon@yahoo.com. *See* Declaration of Amy P. Lally ¶ 2. Indeed, there is no doubt that tomwoon@yahoo.com is Simmons' personal email address. It is the same email address that Simmons used to access and electronically sign his Declaration in Support of Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration, as evidenced by the audit trail attached to his declaration. *See* ECF No. 25-7.

Michaels' business records confirm that the tomwoon@yahoo.com email address was used to open a Rewards account on October 3, 2023. Declaration of Hemanshu Mehta ¶ 4. Plaintiffs do not dispute that this is Simmons' personal email address, nor have they provided any evidence that this account was created or used by anyone other than Simmons himself. Thus, Plaintiffs' arguments regarding tomcarsim@yahoo.com are a red herring and do not undermine the fact that Simmons, using his own email address, affirmatively created a Rewards account and agreed to the Terms and Conditions—including the binding arbitration provision.

Equally unavailing is Plaintiffs' attempt to analogize the Michaels Rewards sign-in wrap agreement to the unenforceable agreement in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025). Plaintiffs rely on a single screenshot from ClassPass' multi-page enrollment process to suggest that the notice provided on the Michaels Rewards sign-up page is similarly deficient. *See* Opp. Opp. 19:3–20:4. But Plaintiffs omit that the screenshot is heavily cropped, excluding approximately two-thirds of the original screen—including significant portions cluttered with images and extraneous text. The full screenshot from of Screen 1 of ClassPass' multi-step enrollment process is reproduced below:




*ClassPass,* 129 F.4th at 1174.

In *ClassPass*, the Ninth Circuit found the sign-in wrap agreement unenforceable due to a combination of factors not present here. Specifically, the ClassPass sign-up flow was spread across multiple pages, cluttered with superfluous images of people exercising, and colors that distracted from the terms. *Id.* at 1156–58. And critically, the language used to obtain assent was muddled: the sign-up process included three different action buttons labeled "Continue" and "Redeem now," which the court found did not make it apparent that a user was committing to anything aside from sharing their email address or redeeming a gift card. *Id.* at 1158–59. The court emphasized that the overall design and presentation failed to provide reasonably conspicuous notice to users and did not clearly link the act of clicking a button to agreement with the terms. *Id.*

In contrast, whether viewed on a desktop computer or mobile device, the Michaels Rewards sign-up page is a single, uncluttered screen that clearly and directly links the Terms and Conditions either adjacent to, or immediately below, the "Sign up" button. *See* ECF Nos. 21 ¶ 6 and 25-4 (showing the Michaels Rewards sign-up page during 2023 on a desktop and mobile device,

respectively)[1]. The notice is presented in a contrasting font and is not buried among extraneous content or images. *Id.* The action button is labeled "Sign up," which unambiguously signals to the user that they are entering into an agreement. *Id.* The phrase "By clicking Sign up, you acknowledge you have read and agree to our Terms and Conditions and Privacy Policy" is placed directly next to the "Sign up" button, and the Terms and Conditions are hyperlinked in blue text, making them easily accessible for review. This design is precisely the type of presentation that courts have found to provide reasonably conspicuous notice and to support enforceability. *See*, *e.g.*, *Morrison v. Yippee Ent., Inc.,* No. 24-7235, 2025 WL 2389424, *1–2 (9th Cir. Aug. 18, 2025) (reversing denial of motion to compel arbitration where "the hyperlink appeared in bright blue font against a clean white background that stood out from the surrounding text to indicate it was clickable" and "[t]he format of [the] webpage was also not so visually cluttered that is distracted from the hyperlink"); *Silva v. WhaleCo, Inc.*, No. 24-cv-02890-SK, 2024 WL 4487421, at *4 (N.D. Cal. Oct. 10, 2024) (enforcing arbitration agreement where disclosure below sign-up button was "large enough to read" and "stands out from the surrounding text"); *Dean v. OkCoin USA Inc.*, No. 24-cv-01331-PCP, 2024 WL 3522207, at *4 (N.D. Cal. July 23, 2024) (holding the same where terms were bolded and treated "in contrast to almost all other text on the page"); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 926 (N.D. Cal. 2024) (holding the same where the sign-in screen "'lack[ed] clutter'" and "[t]he design elements used 'a contrasting font color' making the notice legible") (*quoting Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020–21 (9th Cir. 2024)); *see also ClassPass*, 129 F.4th at 1156–57 (collecting cases holding that uncluttered screens that link terms and conditions directly below the relevant action item in color contrasting text provide reasonably conspicuous notice).

Even if a customer enrolls in Michaels' Rewards program in-store (which Plaintiffs neither allege in their Complaint nor argue in their Opposition), the in-store enrollment process requires

[1] In their Opposition, Plaintiffs assert that the screenshot excerpt of the Michaels Rewards sign-up page provided in the Declaration of Bridget A. Bach in Support of Defendant's Motion to Compel Arbitration (ECF No. 21 ¶ 6) differs from Exhibit B, which is a full printout of the sign-up page from the Wayback Machine as it appeared at the time of Simmons' enrollment. Opp. at 19:17-20:4; ECF No. 21 ¶ 6; ECF No. 21-2. The screenshot is an accurate representation of the relevant parts of the sign-up page as they would have appeared. Any changes in formatting in Exhibit B, such as the wider "Sign up" button or the movement of the Terms statement below the sign-up button, rather than adjacent to it, occurred in the process of printing the webpage to PDF.

customers consent to Michaels' terms and conditions and displays a prompt disclosing those terms that is the same as, or substantially similar to, the one on the website. Mehta Decl. ¶ 5.

Further, Plaintiffs' Opposition fails to address the context of the transaction—an important factor under the sign-in wrap framework. Where the nature of the agreement involves an ongoing relationship—such as requiring users to create an account, set a password, and receive continuing benefits and communications—users should reasonably expect to be bound by terms and conditions, including an arbitration provision. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 17 (9th Cir. 2023) (holding sign-in wrap agreement "requiring a full registration process, reflected the contemplation of 'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship"); *see also Sellers v. JustAnswer LLC,* 73 Cal. App. 5th 444, 480 (2021) (noting that unlike a "sign up" action item, a "Start my trial" action item does not "clearly contemplated some sort of continuing relationship [] that would require some terms and conditions"). This expectation is especially clear in the context of Michaels' Rewards program, which is structured as a continuing relationship rather than a one-time transaction. Thus, the context of Plaintiff Simmons' enrollment in Michaels' Rewards program further weighs in favor of finding reasonably convincing notice of terms.

Applying these principles, Simmons consented to the Terms and Conditions, including the arbitration provision, when he signed up for the Michaels Rewards program. The sign-up page provided reasonably conspicuous notice of the terms, the action required to manifest assent was clear and unambiguous, and the context of the transaction—enrollment in a membership program—further supports the enforceability of the agreement. Courts in this Circuit have consistently enforced arbitration provisions in similar sign-in wrap agreements where the notice is clear, and the user takes affirmative action to enroll in an ongoing program. *See, e.g.*, *Morrison*, WL 2389424 at *1–2 (reversing denial of motion to compel arbitration); *Sarhadi v. Pear Health Labs, Inc.*, No. 24-CV-07921-TLT, 2025 WL 1350033, *8 (N.D. Cal. Apr. 18, 2025) (enforcing arbitration provision in sign-in wrap agreement finding plaintiff had reasonably conspicuous notice of the terms and "manifested his assent to EULA by clicking 'Join Aaptiv'"). *Bender v. Twilio Inc.*, No. 24-CV-04914-AMO, 2025 WL 2308484, *5 (N.D. Cal. Aug. 11, 2025) (finding plaintiff entered into valid sign-in wrap agreement

to arbitrate).

**2. Both Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis When They Used the Website.**

Setting aside that Simmons must be compelled to arbitrate based on his enrollment in the Michaels Rewards Program, both Plaintiffs are independently bound to arbitrate under a well-established browsewrap theory. Under that theory, "the terms of the agreement are posted on the website and indicate that the user is agreeing to the terms simply by continuing to use the website" and such an agreement is enforceable if the website's design and content would put "a reasonably prudent user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175–77 (9th Cir. 2014). Plaintiffs' attempts to avoid this result fail for several reasons. First, their analogies to *Berman* and *ClassPass* are misplaced: both cases involved sign-in wrap, not browsewrap, and neither undermines the Website's clear and repeated references to the Terms. *See* Opp. at 12–13. Second, the one-off purchases in *Nguyen* and *Long* do not inform the inquiry-notice analysis here, where, as above, courts must consider the "full context of the transaction" and the overall webpage design in assessing conspicuousness. *Id.* at 1177; *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F. 4th at 1017. Finally, Plaintiffs' argument regarding assent misreads *Chen*, stretching it to suggest that browsewrap agreements are per se unenforceable. Opp. at 14:5-9. The record, however, demonstrates the opposite: the Website's design, structure, and Plaintiffs' own interactions each confirm that they were placed on inquiry notice and are bound by the Terms.

First, Plaintiffs' arguments do not undermine the central fact that the Website provided clear and conspicuous notice of the Terms.[2] As set forth in Defendant's Motion, links to the Terms are

[2] Relying entirely on *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 394849, at *9 (N.D. Cal. Sep. 5, 2025), Plaintiffs also also argue that they did not have actual notice of the Website's Terms. Opp. at 10:5-22. In *Pemberton*, the defendants notably did not dispute the plaintiff's lack of actual or inquiry notice. *Id.* at *12. There, the court found no inquiry notice where the plaintiff alleged that the cookie opt-out process contained neither a "click or check-box agreement" nor even a "mention of the Terms of Service," and where the defendants' website failed to include a link to the Terms on the home page, or any substantive page. *Id*. at *7. Here, by contrast, Defendant has demonstrated that the Website's Terms were hyperlinked directly next to the Privacy Policy—a link Plaintiffs necessarily encountered when managing their cookie preferences—and that the Privacy Policy itself expressly references the Terms. ECF No. 20 ("Mot.") at 17:8-12. Additionally, unlike in *Pemberton*, Defendant has detailed how the Terms were easily accessible

available at every page of the Website through the "Resources" menu in the footer. Mot. at 10:7-9. Plaintiffs attempt to analogize this configuration to *Berman* (which concerned sign-in wrap and not browsewrap), where the court found that the text disclosing the terms and conditions was "the antithesis of conspicuous" because it appeared "in a font so small that it is barely legible to the naked eye." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). But Plaintiffs allege no facts suggesting that the Terms link or the Resource menu here was "barely legible to the naked eye," nor do they explain how the "'design and content of these webpages draw the user's attention away from' the Terms & Conditions link." Opp. at 12:3-9 (citing *Berman*, 30 F.4th at 857). Simply parroting the analysis from *Berman* does not show that Defendant's disclosure was inadequate.

Nor is Plaintiffs' analogy to *Chabolla v. ClassPass*—another sign-in wrap case—persuasive. Plaintiffs note that in *ClassPass*, the court found that the placement of the terms of use "outside of the user's natural flow" and the use of a font "notably timid in size and color" on its sign-up page failed to place website users on notice of the terms. Opp. at 13:13-16 (citing *ClassPass*, 129 F.4th at 1154, 1157). Here, by contrast, Defendant has clearly demonstrated that a user who, like Plaintiffs, investigated the privacy practices of the Website, would inevitably encounter links and references to its Terms. Mot. at 17:9-13, 17-20. Without more, Plaintiffs fail to cast doubt on Defendant's showing that the Website provided sufficient inquiry notice.

Second, Plaintiffs' reliance on *Nguyen* and *Long* ignores the fundamentally different context in which those cases arose and the far more engaged interactions alleged here. In both *Nguyen* and *Long*, the plaintiffs made a single, isolated purchase on a retailer's website, and did not allege any engagement with other website features or menus. *Nguyen*, 763 F.3d at 1173; *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 859 (2016). Nothing about either plaintiff's brief interaction with the defendants' website indicated a continuing relationship governed by established rules. Here, Plaintiffs' own allegations describe a deliberate, multi-step process to configure the rules governing their visit to the Website: they encountered the Privacy Banner, clicked "Cookie Preferences," navigated to the Cookie Preference Center, adjusted the toggles, and clicked "Confirm My Choices."

---

from every page of the Website and visible when users accessed the Privacy Policy through the cookie banner. *Id*. Thus, *Pemberton* is inapposite.

Compl. ¶¶ 32–35, 112–113. This active engagement contemplates ongoing access to and use of the Website. Just as with the Rewards sign-up, website users configuring ongoing access "would similarly expect (or should expect) their access to the platform would be continual and governed by some terms of use." *Ghazizadeh*, 737 F. Supp. 3d at 926. Plaintiffs' active configuration of their privacy relationship with Defendant rendered their interactions with the Website substantively different from those in the cases they invoke, and placed them on inquiry notice that their continued use of the site was governed by the Terms.

Finally, Plaintiffs ignore Defendant's arguments that Plaintiffs' continued use of the Website constituted assent, restricting the manner in which a website user can assent to a website's Terms clicking a button stating "I Agree" or similar, when browsewrap by definition does not require such an acknowledgement. *See* Opp. at 13-14. As to this point, Plaintiffs' reliance on *Chen* is misplaced. While Plaintiffs cite *Chen* repeatedly to argue that they could not have been on notice of the Arbitration Agreement because they did not expressly acknowledge the Terms by "clicking," *Chen* requires no such thing. *See* Opp. at 10, 12 (citing *Chen v. Premier Fin. All., Inc.*, No. 18-CV-3771 YGR, 2019 U.S. Dist. LEXIS 10280, at *7–8 (N.D. Cal. Jan. 22, 2019) (Gonzalez-Rogers, J.)). There, the court did not hold that browsewrap agreements are categorically unenforceable because they lack a mechanism for express acknowledgement; rather, applying *Nguyen v. Barnes & Noble Inc.*, it denied the motion to compel because the defendants failed to present any evidence regarding the webpage's design, content, or how the terms were displayed to users. *Id.* at *7. *Chen* thus turned on a lack of evidentiary support—not on any rule invalidating browsewrap agreements altogether. *See id.* Here, by contrast, Defendant has provided detailed descriptions supported by screenshots showing—and declarant testimony stating—exactly how and where the Terms & Conditions appeared on the Michaels website, making *Chen* wholly inapposite, and Plaintiffs' assertion that Defendant has "failed to support this argument with any evidence" a distortion. *See* Mot. at 17:8-12; Opp. at 11–12 n.1.

**B. Questions of Arbitrability or Enforceability Must Be Decided by the Arbitrator.**

Plaintiffs' contention that Defendant cannot enforce the Arbitration Agreement's delegation clause ignores controlling Ninth Circuit precedent. In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), the court expressly held that incorporation of the AAA Rules constitutes "clear and

unmistakable" evidence of an agreement to delegate questions of arbitrability to the arbitrator, while merely leaving open—without deciding—whether that holding might differ for an unsophisticated party. Contrary to Plaintiffs' suggestion, district courts are divided on that question. But the issue need not be reached here: Plaintiffs have alleged no facts suggesting they are unsophisticated, and absent such allegations, *Brennan* requires enforcement of the delegation clause.[3]

In *Brennan*, the Ninth Circuit held that "incorporation of the [American Arbitration Association ("AAA")] rules," which state that the arbitrator "shall have the power to rule on his or her own jurisdiction," "constitute[d] clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." 796 F.3d at 1128, 1130. The court limited its holding to the facts of the case, which involved an arbitration between "sophisticated parties," as plaintiff was an "experienced attorney and businessman," and defendant was a regional financial institution. *Id.* at 1131. But the court was clear that "[o]ur holding [in this case] should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could *also apply to unsophisticated parties* or to consumer contracts." *Id.* at 1130 (emphasis added).

District courts are split, but, as described *supra*, the Court in *Brennan* went out of its way to avoid "foreclose[ing] the possibility that [*Brennan*'s] rule could also apply to unsophisticated parties." 796 F.3d at 1130. Naturally, Plaintiffs cite *Magill*, a case in which the court held that the parties did not establish an agreement to delegate questions of arbitrability, because the non-drafting party was "unsophisticated." *See* Opp. at 21:3-8 (citing *Magill v. Wells Fargo Bank, N.A.*, No. 4:21-cv-01877 YGR, 2021 U.S. Dist. LEXIS 248891, at *15 (N.D. Cal. June 25, 2021) (Gonzalez-Rogers, J.)). Not only did the court in *Magill* compel Plaintiffs to arbitration regardless of their relative unsophistication (*see id.* at *25), but there are just as many instances in which courts have held the opposite. *See e.g.*, *Maybaum v. Target Corp.*, No. 2:22-CV-00687-MCS-JEM, 2022 WL 1321246,

[3] Plaintiffs do not dispute that their claims fall within the scope of the Arbitration Agreement, and thus waive the issue. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

at *5 (C.D. Cal. May 3, 2022) ("[T]he majority of courts have concluded that *Brennan* applies equally to sophisticated and unsophisticated parties."), and *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. Jan. 5, 2017) (stating "the clear weight of authority supports the conclusion" that incorporation of AAA rules "provide[s] clear and unmistakable evidence of the parties' intent to delegate ... arbitrability" regardless of the sophistication of the parties).

Plaintiffs' bare assertion that they "did not know their continued use of the [Michaels] Website would subject them to arbitration" does not establish their unsophistication. *See* Opp. at 21:8-10. This case bears no resemblance to *Calzadillas v. Wonderful Co.*, where the court found that seasonal agricultural workers were unsophisticated where it was "unclear what level of education each has attained," No. 1:19-cv-00172-DAD-JLT, 2019 WL 2339783, at *5 (E.D. Cal. June 3, 2019), or *Lewis v. Kelly Servs. Glob., LLC*, Case No. 2:24-cv-06781-JLS-AGR, 2024 WL 5220080, at *4 (C.D. Cal. Nov. 7, 2024), where the plaintiff pled specific facts in his complaint regarding his age and occupation that assisted the court in finding he was unsophisticated relative to the nationwide agency that had moved to compel him to arbitration. *Id.* Plaintiffs here have alleged nothing of the sort. Nor did they take advantage of Rule 15(A)(1)(B)'s 21-day window to amend their complaint after Defendants moved to compel arbitration. *See* Fed. R. Civ. P. 15; *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (applying Federal Rule of Civil Procedure 15(A)(1)(B) to permit amendment within 21 days of the filing of a 12(b)(6) motion). Having failed to plead any facts bearing on their sophistication, Plaintiffs cannot now attempt to amend their pleading through their opposition brief. *See Romero v. HP, Inc.*, No. 16-CV-05415-LHK, 2017 WL 386237, at *6 (N.D. Cal. Jan. 27, 2017) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by brief in opposition to motion to dismiss"). Plaintiffs offer no competent evidence of unsophistication, and their failure to do so does not undermine the parties' clear delegation of arbitrability through their assent to an agreement incorporating the AAA Rules.

**1. The *McGill* Rule Does Not Bar Enforcement of the Arbitration Agreement.**

Plaintiffs' reliance on *McGill v. Citibank*, N.A., 2 Cal. 5th 945, 393 P.3d 85 (2017) is

misplaced. As an initial matter, the threshold question of whether the *McGill* rule applies is itself a "gateway" issue of arbitrability that the parties expressly delegated to the arbitrator. *See Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1176 (N.D. Cal. 2021). As described above, *supra* at 8–9, by incorporating AAA's Consumer Arbitration Rules into the arbitration, the parties have delegated issues regarding the validity of the agreement to the arbitrator. Accordingly, any argument that the arbitration agreement is unenforceable under *McGill* must be decided by the arbitrator, not the Court. *See Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 944–945 (N.D. Cal. 2023); *Norman v. Uber Techs., Inc.*, No. 20-CV-06700-JSW, 2021 WL 4497870, *3 (N.D. Cal. Apr. 14, 2021).

Even if the Court were to reach the merits, Plaintiffs' *McGill* argument fails because Plaintiffs do not seek "public injunctive relief" as defined by *McGill*. The *McGill* rule is limited to circumstances where a plaintiff seeks relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public, under a statute that expressly authorizes such relief, such as the Unfair Competition Law (UCL), False Advertising Law (FAL), or Consumer Legal Remedies Act (CLRA). Here, Plaintiffs' claims are based on alleged privacy violations, including the California Invasion of Privacy Act (CIPA) and related common law theories, and their prayer for relief which includes punitive damages, nominal damages, restitution, and disgorgement, is primarily aimed at remedies for themselves and a putative class of similarly situated individuals—any benefit to the public is merely incidental. Plaintiffs rely on *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal. App. 5th 710 (2021) for the proposition that their prayer for "[a]n order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint," constitutes public injunctive relief. But the Ninth Circuit has expressly rejected *Maldonado* as "wrongly decided," noting that "*Maldonado* plainly erred in holding that any injunction aimed at prohibiting the defendant 'from continuing to engage in its allegedly illegal and deceptive practices' is public injunctive relief." *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021). Indeed, the *McGill* rule is limited to claims for public injunctive relief under qualifying California statutes and does not extend to claims seeking individualized or classwide relief. *Id.*; *see Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) (holding requests for relief that primarily benefit the plaintiff and similarly situated individuals,

rather than the general public, do not constitute public injunctive relief under *McGill*). Accordingly, Plaintiffs' claims do not implicate the *McGill* rule, and the arbitration agreement remains fully enforceable.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel Arbitration and stay Plaintiffs' claims.

Dated: October 17, 2025

Respectfully submitted,

**SIDLEY AUSTIN LLP**

By: */s/ Amy P. Lally*

Amy P. Lally (SBN 198555)
alally@sidley.com
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500

Sarah E. Gallo (SBN 335544)
sgallo@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200

Jessica A. Joyce (SBN 353071)
jessie.joyce@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000

*Attorneys for Defendant*
*Michaels Stores, Inc.*