United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SONNI ECHEVERRIA-CORZAN, ET AL.,** | Case No.  4:25-cv-05839 YGR |
| Plaintiffs, | **ORDER DENYING MOTION TO COMPEL ARBITRATION** |
| v. | |
| **MICHAELS STORES, INC.,** | Re: Dkt. Nos. 20, 30, 35 |
| Defendant. | |

Plaintiffs Sonni Echeverria-Corzan and Thomas Simmons bring this proposed class action against defendant Michaels Stores, Inc. ("Michaels") for state-law claims arising out of defendant's alleged practice of allowing third parties to transmit cookies after a user opted out of "unnecessary cookies."  (Dkt. No. 1, Complaint ["Compl."] ¶ 5.)  Now pending before the Court is Michaels' motion to compel arbitration, which is fully briefed.[1][2]

Having carefully considered the pleadings and the parties' briefs, and for the reasons set forth below, the Court **DENIES** the motion to compel arbitration.[3]

---

[1] (Dkt. No. 20, Defendant's Motion to Compel Arbitration ["Mtn."]; Dkt. No. 25, Plaintiffs' Opposition to Motion to Compel ["Oppo."]; Dkt. No. 28, Defendant's Reply in Support of Motion to Compel Arbitration ["Reply"].)

[2] On January 16, 2026, defendant also filed a Motion to Stay Discovery Pending Resolution of Defendant's Motion to Compel Arbitration (Dkt. No. 35).  This motion is **DENIED** as moot.

[3] Plaintiffs filed objections to defendant's reply briefing, arguing that defendants' additional declarations submitted support new arguments to which plaintiffs did not have an opportunity to respond.  The Court does not reach this question because it finds that even defendant's new evidence and arguments are insufficient to support their motion.

## I.    BACKGROUND

### A.  COMPLAINT ALLEGATIONS

In the complaint, plaintiffs allege as follows.

Plaintiff Sonni Echeverria-Corzan is a resident of Oakland, California.  Plaintiff Thomas Simmons is a resident of Van Nuys, California.  Both plaintiffs visited defendant's website "on one or more occasions during the last four years."  When they visited the website, it presented them with a popup banner to click or select the "Cookie Preferences" link.  Both plaintiffs allege that they adjusted the "Optional" toggle switch on the Cookie Preference Center window and clicked "Confirm My Choices," believing this would opt them out of, decline, and/or reject all Optional cookies, including all Targeting, Social Media, Performance, and Functional cookies, except Required cookies necessary for the Website to function.

Plaintiffs allege that despite these actions, defendant continued to allow the transmission of cookies along with user data, including those involved in providing personalized content, targeted advertising, analytics, and social media content from the Third Parties, on plaintiffs' devices.  Both plaintiffs allege they would not have used the website, or at least would have interacted with the website differently, if they had known defendant would continue to cause cookies and tracking technologies to be stored on consumers' devices even after they choose to opt out.

Plaintiffs assert seven claims: (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of California Penal Code § 631; (4) use of a pen register in violation of California Penal Code § 638.51; (5) common law fraud, deceit and/or misrepresentation; (6) unjust enrichment; and (7) trespass to chattels.  Plaintiffs assert these claims on their own behalf and on behalf of a proposed class comprised of:

> All persons who, while in the State of California, browsed the
> Website after selecting or clicking the "Cookie Preferences" link in
> the popup cookies consent banner, then adjusted the toggle switch
> on the Cookie Preference Center window to opt-out of or reject all

Optional or unnecessary cookies on the Website, and clicked the

"Confirm My Choices" button.

Compl. ¶ 130.

### B. RELEVANT FACTS RE: WEBSITE TERMS & CONDITIONS

The parties do not dispute that defendant's Website Terms & Conditions ("T&C") contains an arbitration agreement.  The T&C can be accessed by a website visitor by scrolling to the bottom of each webpage, clicking on the "Resources" drop-down menu, and selecting "Terms & Conditions."

## II. LEGAL FRAMEWORK

The Federal Arbitration Act ("FAA") requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3.  "The FAA reflects 'both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *Berman v. Freedom Financial Network, LLC*, Case. No. 18-cv-0160-YGR, 2020 WL 5210912 (N.D. Cal. Sept. 1, 2020) (*quoting AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (additional citation omitted).

In ruling on the motion, the Court's role is typically limited to determining whether: (i) an agreement exists between the parties to arbitrate; (ii) the claims at issue fall within the scope of the agreement; and (iii) the agreement is valid and enforceable.  *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The party seeking to compel arbitration bears the burden to establish these conditions.  "[I]f there is a genuine dispute of material fact as to any of these queries, a [d]istrict [c]ourt should apply a 'standard similar to the summary judgment standard of Fed. R. Civ. P. 56.'" *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1175 (N.D. Cal. 2012) (quoting *Concat LP v. Unilever, PLC,* 350 F.Supp.2d 796, 804 (N.D. Cal. 2004)).  "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original).

## III. ANALYSIS

Defendant moves to compel arbitration with respect to both plaintiffs on the basis that they assented to the T&C, which requires disputes be resolved through arbitration.  Defendant further

United States District Court
Northern District of California

3

contends that, to the extent that there are disputes regarding the enforceability of the arbitration agreement, such disputes must be resolved by the arbitrator because the arbitration provisions in the arbitration agreement clearly and unmistakably delegate those disputes to the arbitrator.

First, the Court must determine whether an agreement to arbitrate exists. *See Mitsubishi Motors*, 473 U.S. at 626 ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.").

As this Court explained in *Chabolla v. Classpass*, the Ninth Circuit has, "devised rules to determine whether meaningful assent has been given" to an online agreement. 2023 WL 4544598 at *3 (N.D. Cal. 2023) (citing *Berman* at 856). The standard for evaluating the enforceability of such agreements is "based on an inquiry notice theory." *Id.* "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found . . . only if: (1) the website provides ***reasonably conspicuous notice*** of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that ***unambiguously manifests his or her assent*** to those terms." *Id.* (citing *Meyer*, 868 F.3d at 75; *Nguyen*, 763 F.3d at 1173) (emphasis supplied). Here, defendants do not contend plaintiff had actual knowledge of the provisions to arbitration.

In *Nguyen v. Barnes & Noble Inc.*, the Ninth Circuit distinguished between two forms of online contracts: (1) "clickwrap" agreements, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use," which courts generally enforce, and (2) "browsewrap" agreements, "where a website's terms and conditions are generally posted on the website via a hyperlink at the bottom of the screen," which courts view with skepticism. 763 F.3d 1171, 1177 (9th Cir. 2014).

Because a website user need not take an affirmative action to agree to the terms of such a contract other than his or her use of the website, the validity of a browsewrap agreement "depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Van Tassell v. United Mktg. Grp., LLC,* 795 F.Supp.2d 770, 790 (N.D.Ill.2011); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (collecting cases in which courts enforced browsewrap agreements).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

## A. BROWSEWRAP AGREEMENT

Defendants argue that both plaintiffs assented to the T&C, which defendant asserts visitors agree to simply by using the website. This is not a clickwrap agreement because the website does not present an "I agree" box or other clickable button. Nor does it require users to acknowledge the terms before permitting them to browse the website. Thus, this qualifies as a browsewrap agreement. Therefore, plaintiffs must have actual or constructive knowledge of the terms to support existence of an agreement.

The parties do not dispute that plaintiffs did not have actual knowledge of the terms. Both plaintiffs attest that they "did not know that their use of the Website was subject to additional terms, including the Terms & Conditions." Simmons Decl. ¶¶ 10–11; Echeverria-Corzan Decl. ¶¶ 5–6.

Defendant disagrees, arguing that both plaintiffs assented to the T&C because (1) the terms were reasonably conspicuous and (2) both plaintiffs manifested assent by engaging in deliberative actions to "investigate and configure their privacy settings."

With respect to the issue of "reasonably conspicuousness" defendant asserts that the T&C (a) was available on every page via the "Resources" link in the webpage footer and (b) was located via a link "directly above the link to the Privacy Policy." (Mtn. at 5.) This argument fails to persuade for two reasons. First, that the terms were accessible via a "Resources" tab in the webpage footer does *not* suffice to establish that they were reasonably conspicuous under Ninth Circuit law. The Court agrees with plaintiffs that the "Resources" tab "does not even hint at the Terms & Conditions." It would not be apparent to a reasonable web browser that additional terms exist simply on the basis of a footer link to "Resources" listed among six other footer links. Second, the location of the link is not established. The only evidence defendant offers is a conclusory statement in Bridget Bach's deposition. (Dkt. No. 21, Declaration of Bridget A. Bach in Support of Motion to Compel Arbitration, "A copy of the Terms & Conditions [appears] directly above the link to the Privacy Policy in the Resource Center menu".)

Defendant cites *Ghazizadeh v. Coursera, Inc.* for the proposition that taking affirmative actions, such as engaging "with the mechanisms governing their relationship with a website—

especially privacy controls" demonstrates plaintiff's assent. However, in *Ghazizadeh*, the court treated the agreement as a clickwrap agreement, not a browsewrap agreement, because it required an "assent-manifesting action—creating an account" which was "clear."

### B.    CLICKWRAP AGREEMENT

Defendant also argues that plaintiff Simmons assented to the T&C by signing up for the Michaels' Rewards Program. Plaintiffs dispute whether Simmons did indeed sign up for such an account.

As explained above, the party bringing a motion to compel arbitration bears the burden to show that an agreement exists and courts apply a summary judgment-like standard for the analysis. In their initial motion papers, defendants did not provide sufficient evidence to convince the Court that plaintiff Simmons signed up for a rewards account.[4] The Court provided the parties an opportunity to file supplemental briefing on this point. Given a second opportunity, defendant again fails to persuade the Court that there is no dispute as to whether plaintiff Simmons signed up for a Rewards account. In their sur-reply, defendants provided a declaration from defendant's counsel Amy Lally confirming that plaintiff's counsel provided "tomwoon@yahoo.com" as the email address for plaintiff. (Dkt. No. 28-1.)

However, plaintiff Simmons maintains that he did not create an account, whether with that email address or otherwise. Defendant insists that there is clear proof plaintiff Simmons created an account using this email address, yet they do not provide any evidence beyond a declaration from Director of Customer & Data Science Hemanshu Mehta stating that "the email address tomwoon@yahoo.com was used to create a Michaels Rewards account." Defendant did not submit the referenced business records to identify any other information associated with the account, such as a first or last name. Thus, the Court finds defendant has not met its burden to show there is no dispute regarding plaintiff Simmon's assent to an arbitration agreement.[5]

---

[4] Defendants provided a declaration from security Engineering Manager Bridget A. Bach stating: "On October 3, 2023, Plaintiff Thomas Simmons signed up for a Michaels Rewards account on its website." (Dkt. No. 21.) The declaration did not describe or include any supporting evidence to support this conclusory statement.

[5] Defendant claims that at most a factual dispute exists. To the extent defendant seeks to have this Court reconsider its ruling, it bears the burden of showing compliance with Local Rule 7-9.

Because the Court determines that there was no agreement for either plaintiff, it need not reach the remaining questions of delegation of arbitrability and scope of the agreement.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's motion to compel arbitration.  Per the Court's Order granting the parties' stipulation (Dkt. No. 19), defendant's response to the complaint will be due thirty (30) days the entry of this Order.  An initial Case Management Conference will be held on Monday, April 6, 2026, at 2:00 p.m.

This order terminates Dkt. Nos. 20, 35.

**IT IS SO ORDERED**.

Date:   February 6, 2026

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

7